IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL CAGGIANO, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 14 C 3378 |
| ) | |
| ILLINOIS DEPARTMENT OF CORRECTIONS, ) | Judge Robert W. Gettleman |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Caggiano, an Illinois citizen, filed a one-count complaint against his former employer, the Illinois Department of Corrections, alleging violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq.[1] Defendant has filed the instant motion for summary judgment pursuant to Fed. R. Civ. P. 56, which, for the reasons discussed below, is denied.

## BACKGROUND[2]

Plaintiff began working for defendant in November 1996. In April 2012, plaintiff was employed as a Corrections Residence Counselor I at defendant's Westside Adult Transition Center ("Westside ATC"). In 2011 and 2012, plaintiff was scheduled to work from 11:00 P.M. to 7:00 A.M., with a thirty-minute lunch break, Saturday through Wednesday.

---

[1]Plaintiff's complaint did not specify what theory the alleged "violation of the FMLA" was brought under, interference or retaliation. The court's October 15, 2014, Order held that plaintiff brought only an FMLA interference claim.

[2]The following facts are, unless otherwise specified, undisputed and come from the parties' Local Rule ("L.R.") 56.1 statements and responses.

Plaintiff took FMLA leave in 2011 to care for his mother, who was suffering from recurrent breast cancer and severe Chronic Obstructive Pulmonary Disease. Plaintiff took FMLA leave from April 3, 2011, through April 15, 2011, and October 11, 2011, to December 7, 2011. By December 7, 2011, defendant believed that plaintiff had exhausted his sixty days of FMLA leave and granted him Family Responsibility Leave ("FRL") until December 20, 2011.[3]

Plaintiff did not report to work on April 7 through 10, 2012, because he "was taking care of his mother who was ill." On April 18, 2012, he wrote to DeAnna Clark, defendant's Public Service Administrator, requesting FMLA protection for these dates. She acknowledged receiving his request on April 19, 2012, and stated that he had recently met the yearly 1,250-hours requirement necessary to be eligible for FMLA leave. She also told him that once she received and reviewed his FMLA application, she would tell him if it was approved. Clark asked Babette Rey, Westside ATC's Timekeeper, to calculate plaintiff's total hours worked with April 7, 2011, as a starting point. Using his 2011 and 2012 timesheets, Rey calculated that plaintiff had not met the yearly 1,250-hours requirement until April 15, 2012, when he finished his shift with 1,257 hours worked. Accordingly, plaintiff's FMLA leave request for April 7 through 10, 2012, was denied.[4]

---

[3]Plaintiff denies he exhausted his 2011 FMLA leave, but does not reference any affidavit, part of the record, or other material in support of the denial as required by L.R. 56.1(b)(3). Accordingly the statement is deemed admitted. See McGuire v. United Parcel Serv., 152 F.3d 673, 675 (7th Cir. 1998) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission.").

[4]Plaintiff claims, in his L.R. 56.1 statement of facts, that he was told that his application was denied because it was not completely filled out, and that his application "did not justify taking time off." This dispute, however, is not relevant to the current motion.

Plaintiff rejects this calculation and claims that from April 7, 2011, to April 7, 2012, he worked 1,299 hours, based on an eight-hour workday, because he was not "relieved at lunch," not able to "leave the premises," not able to "eat in the lunchroom," and always "ate on duty in the dayroom with inmates."

Plaintiff had a disciplinary hearing on May 7, 2012, for alleged unauthorized absences from April 7 through April 10, 2012. On May 22, 2012, the hearing officer concluded that plaintiff violated defendant's attendance policy and recommended progressive discipline, "beginning with a 15 day suspension for April 7, 2012, proceeding to a 20 day suspension for April 9, 2012, and culminating with discharge for April 10, 2012."[5] The record indicates that this was communicated to plaintiff for the first time on June 15, 2012, as discussed below.

On June 13, 2012, plaintiff wrote to Clark requesting FMLA leave for June 3, 9, 10, and 11, 2012, to care for his mother, and again requesting FMLA leave for April 7 through 10, 2012. Clark sent him an email on the same day stating, "[i]n order for your FMLA to begin, you must have an absence that's FMLA related. I've confirmed with your timekeeper that you've not informed anyone of an FMLA absence since April 10th. Since you have not worked your required 1250 hours until April 15th, we were unable to start your FMLA on the 10th."[6]

On June 15, 2012, plaintiff was suspended pending discharge. Thereafter, on July 2, 2012, plaintiff was terminated because "his absences from work on April 7, 9, and 10, 2012 were

---

[5]The court notes that although April 8, 2012, was a Sunday, and therefore one of plaintiff's regularly scheduled work days, April 8th is absent from the hearing officer's findings.

[6]It is unclear what impact these June absences had on plaintiff's employment, but they are not addressed in the motions or L.R. 56.1 statements, even though plaintiff claimed in his deposition that the application for the June absences was also denied.

3

determined to be unauthorized and based on progressive discipline and the number of unauthorized absences Plaintiff had accumulated prior to April 7, 2012."

## **DISCUSSION**[7]

**A.    Legal Standard**

A movant is entitled to summary judgment pursuant to Fed. R. Civ. P. 56 when the moving papers and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Green v. Carlson, 826 F.2d 647, 651 (7th Cir. 1987).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving

---

[7]In its reply, defendant asks the court to strike a number of plaintiff's L.R. 56.1 responses for violating this court's local rules. To the extent that any of plaintiff's still relevant statements of fact offend this court's local rules, the court will not consider them. See Gittings v. Tredegar Corp., 2010 WL 4930998, at *1 n.4 (N.D. Ill. 2010).

4

party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

**B.     Analysis**

Defendant argues that it is entitled to summary judgment because there is no genuine issue of material fact as to whether plaintiff was eligible for FMLA leave from April 7 to 10, 2012. Defendant claims that the record establishes that plaintiff did not qualify as an FMLA eligible employee until April 15, 2012, when he met the yearly 1,250-hours requirement. Defendant also contends that even if plaintiff did meet the yearly hours requirement by April 7, 2012, he still did not qualify for FMLA leave because it did not have actual or constructive knowledge of him working through his lunch breaks. Finally, defendant argues that even if plaintiff was an FMLA eligible employee by April 7, 2012, it is still entitled to summary judgment because he had already exhausted his FMLA leave by that date.

Plaintiff argues that even though he was scheduled to work seven and a half hours a day, he actually worked eight hours a day because he never took a lunch break during his shift. According to plaintiff, the third shift at Westside ATC was so understaffed that he was not "relieved at lunch," not able to "leave the premises," not able to "eat in the lunchroom," and always "ate on duty in the dayroom with inmates." Plaintiff contends that a reasonable jury could find that by April 7, 2012, he was an FMLA eligible employee because he had worked 1,299 hours and defendant had actual or constructive knowledge of his working through his lunch breaks. He also argues that defendant did not submit any evidence that he had exhausted his FMLA leave by April 7, 2012. The court agrees.

The FMLA entitles an eligible employee to twelve workweeks of leave during any twelve-month period for certain qualifying reasons, including the need to care for a parent suffering from a serious health condition. 29 U.S.C. § 2612(a)(1)(C). Under the FMLA, it is unlawful for an employer to interfere with an employee's attempt to exercise his FMLA rights. 29 U.S.C. § 2615(a)(1).

To prevail on his FMLA interference claim, plaintiff must show that: (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) the employer denied him FMLA benefits to which he was entitled. See e.g., Burnett v. LFW, Inc., 472 F.3d 471, 477 (7th Cir. 2006); Daugherty v. Wabash Ctr., Inc., 577 F.3d 747, 750 (7th Cir. 2009); see also Segura v. TLC Learning Center, 2015 WL 93910, at *3 (N.D. Ill. 2015). The only elements in dispute are whether plaintiff was an FMLA eligible employee and was denied FMLA benefits to which he was entitled.

The parties dispute whether plaintiff was an FMLA eligible employee on April 7 through 10, 2012. To be eligible for FMLA protections, an employee must be employed by the employer for at least twelve months and work at least 1,250 hours "with [the] employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). The FMLA's hours-of-service requirement is calculated by using the Fair Labor Standards Act's ("FLSA") legal standards. 29 U.S.C. § 2611(2)(C) (cross-referencing 29 U.S.C. § 207); see also Pirant v U.S. Postal Serv., 542 F.3d 202, 206 (7th Cir. 2008).

Defendant contends that with a thirty-minute lunch break, plaintiff worked seven and a half hours a day; plaintiff contends that because he was not able to take a lunch break, he worked

6

eight hours a day. The FLSA does not allow "bonafide" meal breaks to be factored into countable work hours, but a break can count as work time if the employee is not "completely relieved from duty for the purposes of eating regular meals." 29 C.F.R. § 785.19(a). The Seventh Circuit has adopted the predominant benefits test to determine whether meal periods should be credited as work time. Barefield v. Village of Winnetka, 81 F.3d 704, 710 (7th Cir. 1996) (citing Alexander v. City of Chicago, 994 F.2d 333, 337 (7th Cir. 1993)). Under this test, a meal period is not considered "work time if the employee's time is not spent predominantly for the benefit of the employer." Id.

In support of its motion, defendant submitted a number of exhibits, including plaintiff's supervisors' and other defendant employees' depositions or affidavits, plaintiff's time sheets, and payroll records. Defendant submitted an affidavit from Darnell Cooks, plaintiff's supervisor, in which he attested to never observing, ordering, or requiring plaintiff to work through his lunch break from April 2011 through April 2012. Defendant also submitted an affidavit from Albert Rimito, the Superintendent/Center Supervisor of Westside ATC, in which he attested that he would have approved a Westside ATC employee's overtime request if the employee worked through his lunch. In addition, defendant submitted plaintiff's time sheets for April 2011 through April 2012, which show that plaintiff never claimed to have worked through any of his lunches.[8] Finally, defendant submitted plaintiff's payroll records to demonstrate that plaintiff never requested overtime pay.

---

[8]Plaintiff reviewed the time sheets each month with his supervisor, and never complained of any discrepancies.

In contrast, at his deposition, plaintiff testified that because of understaffing, Westside ATC staff members on his shift were unable to take their scheduled half-hour breaks. Plaintiff explained that he was able to eat "a bite [of lunch] here and there . . . [but] he could not sit down and eat [because he had to handle] transports, medical writs, picking up people that escape[d]" and "especially taking people on medical, on tour duty." Plaintiff claimed that these responsibilities prohibited him from eating in the Westside ATC employee-only lunchroom and forced him to eat in one of the Day Rooms where the inmates congregated. Consequently, whether plaintiff's lunch breaks were spent predominantly benefiting defendant remains a genuine issue of material fact. Barefield, 81 F.3d at 710; Alexander, 994 F.2d at 337.

Defendant argues that plaintiff's deposition is merely "self-serving testimony" and cannot create an issue of material fact. Defendant relies on Boring v. World Gym-Bishop, Inc., 2009 WL 703385, at *14 (N.D. Ill. 2009), for the proposition that a deposition alone cannot create a genuine issue of material fact. This argument fails because it ignores clear Seventh Circuit precedent, which states that "evidence presented in a 'self-serving' . . . deposition is enough to thwart a summary judgment motion." Payne v. Pauley, 337 F.3d 767, 773-75 (7th Cir. 2003); see also Kellar v. Summit Seating Inc., 664 F.3d 169, 175 (7th Cir. 2011) (finding that the district court erred by not accepting the plaintiff's deposition testimony because she "offere[ed] no evidence other than her own testimony [in] support [of] her argument."). Therefore, plaintiff's testimony is sufficient to create a genuine issue of material fact.

Additionally, courts have held that an employee raises a genuine issue of material fact when he alleges that he constantly worked through his meal breaks. See e.g., Weidner v. Unity Health Plans Ins. Corp., 606 F. Supp. 2d 949, 958-59 (W.D. Wis. 2009) (holding that even

8

though the defendant had records that indicated the plaintiff did not work more than 1,250 hours, the undocumented time the plaintiff swore she spent working through her breaks was enough to create a "material factual dispute"); see also Tavares v. Lawrence & Memorial Hosp., 2015 WL 2090493, at *6 (D. Conn. 2015) (holding that the plaintiff's claim that she worked through all of her lunch breaks was "specific and concrete enough to permit a reasonable jury to find in her favor" to create a genuine issue of material fact).

Defendant further argues that even if plaintiff worked through his lunch, the half an hour should not count as work time because defendant "did not have actual or constructive knowledge" of him working through his breaks. Defendant improperly relies on 29 C.F.R. § 785.11 and Cunningham v. Gibson Electric Co., 43 F. Supp. 2d 965 (N.D. Ill. 1999), in an effort to impose an affirmative requirement on plaintiff to establish defendant's knowledge. 29 C.F.R. § 785.11 imposes no such duty. Instead, the regulation provides that unrequested work is work time if the employer "suffer[s] or permit[s]" the work and "knows or has reason to believe that [the employee] is continuing to work." Likewise, Cunningham does not support defendant's position because there the court conducted a bench trial, performed a thorough inquiry into all of the disputed facts, and ignored the unconvincing ones. See e.g., id. at 976 (disregarding "unpersuasive testimony"). On summary judgment, the court may not conduct this type of fact-intensive inquiry; it must determine only whether there is a genuine issue of material fact. Green, 826 F.2d at 651. Regardless of what knowledge was required, there is still a genuine issue of material fact as to whether "it was not a secret" that plaintiff worked through his lunch breaks.

Defendant also argues that it should prevail because plaintiff did not "present[] evidence that he had personal knowledge that any of his IDOC supervisors or other personnel knew that he worked through his 30-minute lunch break." Defendant does not cite any support for this requirement, and the FLSA regulations impose a duty on management only. 29 C.F.R. § 785.13 (placing an affirmative duty on employers to oversee employees, and not rely on a promulgated rule only). At this time, it is not clear whether plaintiff worked through his lunch breaks, but it is clear that defendant had a duty to ensure that plaintiff was not working through his breaks if it did not want him to. Whether defendant met this duty remains a genuine issue of material fact.

Finally, defendant argues that even if plaintiff was an FMLA eligible employee, its motion should still be granted because plaintiff exhausted his FMLA leave prior to April 7, 2012. An employee is entitled to twelve workweeks of FMLA leave in any twelve-month period. 29 U.S.C. § 2611(2)(A). Defendant argues, and plaintiff denies, that between October 2011 and October 2012 plaintiff had already exhausted his FMLA leave.

Notwithstanding the fact that defendant has not submitted any evidence establishing that it clearly articulated to its employees when the twelve-month period for calculating FMLA leave began, see Bachelder v. America West Airlines, Inc., 259 F.3d 1112, 1127 (9th Cir. 2001), the record shows that plaintiff had not exhausted his FMLA leave by April 7, 2012. Defendant repeatedly argues that plaintiff was entitled to sixty calendar-days of leave, which he exhausted by taking leave from "October of 2011 to December of 2011." The FMLA grants an employee twelve workweeks of protected leave, which courts understand to mean either sixty work-days or eighty-four calendar-days. See e.g., Weidner, 606 F. Supp. 2d at 952 (interpreting twelve

workweeks as sixty work-days); see also Chatman v. Morgan Lewis & Bockius LLP, 2015 WL 1744120, at * 13 (N.D. Ill. 2015) (interpreting twelve workweeks as eighty-four calendar-days).

To accurately calculate an employee's remaining FMLA leave requires a specificity in dates that "October of 2011 to December of 2011" does not provide. The timesheets defendant submitted as exhibits 5 and 6 of this motion show that plaintiff took FMLA leave from October 11, 2011 to December 7, 2011. Defendant believed that plaintiff exhausted his FMLA leave at this time and granted him FRL leave until December 20, 2011.[9] It is ten weeks from October 11, 2011, to December 20, 2011. Accordingly, even assuming that the FMLA year is calculated from October 2011 to October 2012, plaintiff was entitled to an additional two weeks of leave following his return to work on December 20, 2011.

Because there are genuine issues of material fact as to whether plaintiff was eligible for FMLA leave from April 7 through April 10, 2012, and entitled to FMLA benefits, the court denies defendant's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the court denies defendant's motion for summary judgment. The parties are ordered to appear for a status hearing on February 16, 2016, at 9:00 A.M.

**ENTER:** **January 29, 2016**

_____
**Robert W. Gettleman**
**United States District Judge**

---

[9]For the purposes of this motion, the court considers this FRL leave as FMLA leave.